**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

William L. Belville,                                               Case No. 3:10CV627

        Plaintiff

v.                                                                         ORDER

Commissioner of Social Security,

        Defendant

In this appeal, I review defendant Commissioner of Social Security's (Commissioner) final decision denying plaintiff William L. Belville's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381, *et seq.* Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

Belville objects [Doc. 16] to the Magistrate Judge's Report [Doc. 15] recommending I affirm the decision of the Commissioner. Based on a *de novo* review of the record, I overrule Belville's objections.

**Procedural Background**

Belville filed an application for supplemental security income on January 18, 2006. He alleged disability beginning April 14, 2004. The Commissioner denied his claim both initially and on reconsideration.

Administrative Law Judge Yvonne K. Stam (ALJ) held a video hearing on January 8, 2008, in response to Belville's timely written request. Belville appeared with counsel and testified. Amy Kutschbach, an impartial vocational expert, also testified at the hearing.

On October 7, 2008, the ALJ issued a written decision denying Belville's application for benefits, determining that he retained the residual functional capacity to perform his past work and therefore was not disabled.

Belville appealed the ALJ's decision on October 7, 2008. The Appeals Counsel initially denied the request for review, but subsequently vacated the denial to consider Belville's arguments. The Appeals Court denied review of the ALJ's decision a second time on January 19, 2010, thereby making the ALJ's decision the final decision of the Commissioner.

Belville sought judicial review of the Commissioner's decision in this court, leading to Magistrate Judge Kenneth S. McHargh's March 2, 2011 Report and Recommendation that the decision of the Commissioner be affirmed.

**Medical History**

In 2005, 2006, and 2007, Belville occasionally saw Ronald Williams, M.D., for pain in his back and hips. R. at 195–205. His physical exams were generally normal except for painful straight leg raising. R. at 195–205. He received prescriptions for Vicodin and Motrin. R. at 195–205.

On February 14, 2005, A.K. Bhaiji, M.D., a state agency physician, performed a consultative

examination. R. at 167–73. In addition to a physical examination, he ordered a radiology examination. R. at 174. The physical examination showed that Belville had an artificial right eye and 20/40 vision in his left eye. The physical exam also showed that Belville experienced a limited range of motion in his lower back and a somewhat limited range of motion of the right shoulder and some mild shoulder weakness. R. at 170–72. Dr. Bhaiji found that Belville did not have any difficulty getting off the examination table or walking on his heels and toes. The radiology exam showed probable bilateral lumbar spondylolysis at L-5, Grade I anterolisthesis of L-5 on S-1 and mild spina bifida occulta at L-5. R. at 174.

Dr. Bhaiji diagnosed Belville with monocular vision, lumbar sprain/strain, status post right-shoulder injury, and cervical sprain/strain. R. at 169. He opined, based on his findings, that Belville "would not have difficulty with work-related physical activities such as sitting. May have difficulty standing, walking, lifting and carrying objects. No difficulty handling objects. No difficulty hearing or speaking. May have difficulty with traveling." R. at 169.

In September 2005, a magnetic resonance imaging (MRI) scan of Belville's neck and back showed a mild to moderate degree of bulging in the cervical spine, without compression or displacement of the nerve, and a mild degree of bulging and narrowing in the lumbar spine, without any discrete focal abnormality. R. at 206–208.

On August 16, 2006, William Padaman M.D., a state agency physician, examined Belville and evaluated his physical condition. R. at 177-83. Dr. Padamadan noted Belville's complaints of pain in his low back, right arm and shoulder. R. at 177. Dr. Padamadan reported that Belville's vision was blind in his artificial right eye, and 20/50 in the left eye with glasses. R. at 178. Belville walked without any ambulatory aids, cane, or limping. R. at 178. He had normal lung and heart

examinations, and benign abdominal examination. R. at 178. He had full ranges of motion in his right shoulder, without any atrophy of the shoulder girdle muscles R. at 179. He was able to clap his hands over his head without any difficulty, and his grip strength was satisfactory. R. at 179-80. He had no wasting of his upper extremity muscles, and no joint deformities. R. at 179. His straight leg raising was limited to 25 degrees in the supine position, and 80 degrees in the sitting position (90 degrees is normal in both positions). R. at 179. His hip flexion on standing was excellent. R. at 179. He was alert and oriented, and had a normal gait. R. at 179.

Dr. Padamadan diagnosed Belville as having low back pain without objective finding or functional impairment, and right shoulder pain without any objective finding. R. at 179. Dr. Padamadan concluded that Belville was able to sit, stand, and walk; and use his upper extremities for reaching, handling, and fine and gross movements. R. at 179–80. He observed that Belville had a normal mental status without any overt signs of anxiety or depression. R. at 179). Dr. Padamadan stated that Belville might need restrictions from work-related activities which required a full field of vision because he had only one eye. R. at 179.

On August 25, 2006, Allan M. Berger, M.D., a state agency physician, reviewed Belville's medical records. R. at 184. He recommended no driving, working at hazardous heights, or working around machinery. R. at 184.

On August 26, 2006, Nick Albert, M.D., a state agency physician, reviewed Belville's medical records and found no basis for restricting Belville's residual functional capacity (RFC) except for visual limitations. R. at 185–88. Dr. Albert recommended limitations on working around hazards.

On February 7, 2007, W. Jerry McCloud, M.D., a state agency physician, reviewed Belville's

4

updated medical records, and assessed his residual functional capacity (RFC). R. at 209–16. Dr. McCloud noted that Belville had right-eye blindness and degenerative disc disease of the cervical and lumbar spine. R. at 209. Dr. McCloud indicated that Belville was able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk about six hours a day, sit about six hours a day, and push and pull to an unlimited degree. R. at 210. He noted that Belville had a short history of both neck and back pain, and that he had 20/50 vision in his left eye. R. at 210. Dr. McCloud assessed no additional postural limitations[1] or manipulative limitations.[2] He noted Belville's limited vision and recommended he avoid concentrated exposure to hazards because of his monocular vision. He concluded that Belville's claims regarding his limitations were credible.

In October, 2007, Belville went to a pain clinic at St. Vincent Mercy Medical Center for his low back, right arm, right shoulder and hip pain. R. at 247–48. Belville was taking four Vicodin a day. R. at 247. A lumbar MRI scan showed a mild degree of bulging in the lumbar vertebrae, a mild to moderate degree of foramina narrowing at the L3 and L5 levels, significant foraminal narrowing noted at the L4–L5 disk level, and a mild degree of foramina narrowing at the L2–L3 level. Dr. Sujaya Vijayakumar concluded that Belville had a mild degree of degenerative disk disease and a mild degree of spinal stenosis. He offered Belville a trial of epidural steroid injections to help with the pain.

On November 19, 2007, a radiology examination of Belville's spine showed spondylolisthesis at L5-S1. R. at 221. Dr. Parvez performed a physical examination, noting that Belville walked slowly with guarded movements, and that his forward flexion, extension and

---

[1] Limitations on climbing, balancing, stooping, kneeling, crouching or crawling. R. at 211.

[2] Limitations on reaching, handling, fingering or feeling. R. at 212.

rotation were limited due to pain. R. at 234. She noted that he reported increased pain when walking on his heels and toes. R. at 235. A toxicology screen that same day tested positive for the presence of cannabis, and attending physician Yasmin Parvez informed Belville that he must have a clean drug test before his Vicodin prescription could be refilled.

At his hearing on January 8, 2008, the ALJ questioned Belville about his condition. Belville testified that he could sit for fifteen to twenty minutes at a time before he needed to do something else. He testified that he could stand for ten to fifteen minutes. He testified that he could not walk beyond a quarter of a mile, and that he tries to avoid all lifting. He testified that on a typical day, he doesn't do anything or go anywhere, and spends his day alternating between watching television and laying down when his back hurts.

### Standard for Disability

A claimant is entitled to receive Disability Insurance, Supplemental Security Income benefits or both only after establishing disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. Disability is the inability to perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R §§ 404.1505, 416.905.

To determine disability, the ALJ engages in a five-step sequential evaluation. 20 C.F.R. § 404.1520. The ALJ considers whether: 1) claimant is engaged in work that constitutes substantial gainful activity; 2) claimant is severely impaired; 3) claimant's impairment meets or equals the Secretary of Health and Human Services's Listing of Impairments; 4) claimant can perform past relevant work; and 5) other jobs exist in significant numbers to accommodate claimant if claimant

cannot perform his past relevant work, given his RFC, age, education and past work experience. *Id*. The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002).

### ALJ Findings

The ALJ found:

1) The claimant has not engaged in substantial gainful activity since January 18, 2006, the application date.

2) The claimant has the following severe impairments: vision problems, right shoulder pain, and spinal pain.

3) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4) After careful consideration of the entire record, [the ALJ] finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that he must avoid hazards, small objects, and small type (less than 10 point) due to the fact that he is blind in his right eye and that he has 20/50 vision in his left eye.

5) The claimant is capable of performing his past relevant work.

6) The claimant has not been under a disability, as defined in the Social Security Act, since January 18, 2006, the date the application was filed.

R. at 16–19 (internal citations omitted).

### Standard of Review

I review *de novo* those portions of the Magistrate's Report to which either party objects. *See* 28 U.S.C. § 636(b)(1).

The Social Security Act, 42 U.S.C. § 405(g), allows limited judicial review of the Commissioner's decision. I "may not try the case de novo, nor resolve conflicts in the evidence, nor

decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). I must affirm the Commissioner's decision if: 1) substantial evidence supports the ALJ's findings; and 2) the ALJ applied the proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see also Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The substantial evidence standard, though deferential, is not trivial. *TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 394-395 (6th Cir. 2002). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951); s*ee Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978). Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra*, 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently or substantial evidence also supports the opposite conclusion. 42 U.S.C. § 405(g); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986), *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

**Discussion**

The Magistrate Judge recommends I affirm the decision of the Commissioner because substantial evidence supports the ALJ's determinations, notwithstanding Belville's arguments that: 1) the ALJ improperly evaluated the medical opinion evidence submitted by Dr. Bhaiji and 2) the

ALJ improperly evaluated Belville's credibility.

Belville objects to the Magistrate Judge's Report and Recommendation because he asserts that the Magistrate Judge relied on improper post hoc rationalizations and misstated Belville's arguments when he determined that substantial evidence supported the ALJ's findings.

### 1. Dr. Bhaiji's Opinion

The Magistrate Judge rejected Belville's argument that the ALJ's RFC finding was not consistent with Dr. Bhaiji's opinions.

Belville argued that the ALJ's finding that he was capable of performing "medium work" was inconsistent with the opinion of Dr. Bhaiji. Medium work, as the Social Security Administration acknowledged in Ruling 83-10, requires standing or walking "for a total of approximately 6 hours in an 8-hour workday." Belville argues that Dr. Bhaiji's opinion that he "may have difficulty standing, walking, lifting, and carrying objects" shows that Belville is not capable of the requirements of medium work.

The Magistrate Judge found this argument unpersuasive. Noting that the use of the term "may" alludes to the possibility that Belville "*may not* experience any difficulty in performing these functions," [Doc. 15 at 6], the Magistrate Judge pointed out that the ALJ considered the entirety of the medical evidence in reaching her RFC findings, that she found the rest of the evidence to support her RFC finding, and that she observed that Dr. Bhaiji's findings "are not supportive of a more restrictive assessment of the claimant's residual functional capacity than the State Agency opinion." R. at 17. The Magistrate Judge therefore found that substantial evidence supported the ALJ's determination.

Belville argues that the Magistrate Judge relied on improper post hoc rationalization when

9

he addressed the use of the term "may" by pointing out that it alludes to "may not." But Belville misunderstands the Magistrate Judge's point. The Magistrate Judge was not, as Belville avers, explaining the ALJ's rationale, but rather explaining why Belville's interpretation of Dr. Bhaiji's opinion was misplaced—Dr. Bhaiji's statement was not a definitive affirmation of Belville's inability to stand, walk, lift, or carry objects for prolonged periods.

The Magistrate Judge found that the ALJ's opinion was based on substantial evidence because:

> The ALJ supported [her] evaluation of Dr. Bhaiji's findings by noting that the doctor rated Belville's right shoulder muscle strength a four on a scale of one to five, although Plaintiff had a limited range of motion in that area (Tr. 17). Furthermore, when commenting about Plaintiff's ambulation, Dr. Bhaiji stated that Plaintiff had "no difficulty with heel to toe walking[,]" no use [of] ambulatory aid was noted, and gait was normal." (Tr. 168).
> ALJ Stam also referenced the opinions of Dr. William Padamadan when explaining the basis of her RFC determination (Tr. 17, 177-83). Dr. Padamadan examined Belville over a year after Dr. Bhaiji saw Plaintiff. In Dr. Padamadan's report he summarized Plaintiff's ability to sit, stand, walk, reach, and handle as "without problem" (Tr. 179). The doctor observed that Plaintiff had a full range of motion in his right shoulder (Tr. 177, 179), and rated Plaintiff's muscle strength as a five on a scale of one to five (Tr. 180). Dr. Padamadan further commented that Plaintiff ambulated "quite well" and had a normal gait (Tr. 179). The only functional limitation that Dr. Padamadan noted was that Plaintiff "may need restrictions for work related activities which require full field of vision because [Plaintiff] has only one eye, on the left side." (Tr. 179).

[Doc. 15, at 7]. I agree with the Magistrate Judge's conclusion that it is clear that substantial evidence supports the ALJ's RFC finding. Belville's argument that Dr. Bhaiji's opinion demands a more restrictive RFC is unpersuasive.

The Magistrate Judge also considered and rejected Belville's argument that the ALJ should have sought clarification from Dr. Bhaiji before assuming that his opinion accorded with her RFC finding. Belville is correct that the Magistrate Judge incorrectly cited to the regulation pertaining

10

to treating physicians, and therefore his rejection of the argument was misplaced. But even considering the proper regulation, Belville's argument must fail.

20 C.F.R. § 416.919p(b), on which Belville relies, provides that the ALJ will contact the examining source for clarification "[i]f the report is inadequate or incomplete." The ALJ did not find Dr. Bhaiji's report inadequate or incomplete, and therefore had no need to contact him. Moreover, substantial evidence supported her R.F.C. finding and her conclusion that Dr. Bhaiji's report accorded with it and with the other medical evidence. There was no need for the ALJ to further develop the record. The Magistrate Judge's error is therefore harmless.

### 2. Belville's Credibility

Belville objects to the Magistrate Judge's recommendation to affirm the ALJ's findings as to Belville's credibility, arguing that the Magistrate Judge engaged in post hoc rationalizations and misstated Belville's arguments.

Belville believes that the Magistrate Judge misstated his argument as being that the ALJ relied "solely" on his use of marijuana in finding him incredible. As the Magistrate Judge addressed both of Belville's arguments regarding the ALJ's credibility assessment—that she did not concede that the use of Vicodin corroborated his pain complaints and that she failed to reasonably consider his daily living activities—any perceived misstatement is immaterial.

Belville asserts that the Magistrate Judge did not consider his argument that the ALJ failed to reasonably evaluate his use of medication and his daily living activities, as required by 20 C.F.R. § 416.929(c)(3). But this is incorrect. Belville argued that the ALJ did not consider his Vicodin use and incorrectly rejected his subjective evidence of his daily living activities because it was non-objective evidence. The Magistrate Judge explained in rejecting these arguments that the ALJ's

11

decision demonstrated consideration of both his Vicodin use, the pain level he reported both when taking and not taking Vicodin, and his restricted daily living activities.[3]

As the Magistrate Judge summarized:

> In explaining her decision, [the ALJ] indicated that none of the medical opinions of record substantiated Plaintiff's complaints of disabling pain (Tr. 18). The ALJ went on to state that the objective medical evidence was largely unremarkable, and that there was "no evidence of muscle atrophy and only mild to moderate abnormalities on the x-rays and MRIs" (Tr. 18). In addition, Belville had never had any spinal or shoulder surgery to relieve his alleged pain, and there was no evidence to corroborate that his limited daily activities (sitting on the couch, watching television, and lying down) were caused by any medical condition (Tr. 18).
> The reasoning supplied by the ALJ to support her credibility determination is sufficient to satisfy this Court. The ALJ compared Belville's testimony regarding his back and shoulder pain with the evidence in the record and concluded that his complaints were not credible.

[Doc. 15, at 9–10].

As the Magistrate Judge correctly observed, "an ALJ's finding based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* at 9 (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 523, 531 (6th Cir. 1997). An ALJ must clearly state the reasons for rejecting a claimants complaints as incredible, but the ALJ has done so here. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Moreover, 20 C.F. R. § 416.929, on which Belville relies, requires not only that an ALJ consider a claimant's subjective report of symptoms, but also "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence."

---

[3] Belville argues that the Magistrate Judge improperly relied on the ALJ's summary of the evidence, and that such a summary cannot show a substantive evaluation of the facts. But the Magistrate Judge relied on the ALJ's "Findings of Fact," R. at 16–18, which the Magistrate Judge found, as I do, reflected the ALJ's consideration of the record before her.

§ 416.929(a). The ALJ specifically found that Belville's subjective report of disabling pain and severe restrictions was inconsistent with the objective medical testimony. She did not, as Belville asserts, reject his subjective evidence because it was "non-objective," but because it was inconsistent with the medical evidence. She supported this assessment with substantial evidence, as described above.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Plaintiff William L. Belville's objections to the Report and Recommendation of the United States Magistrate Judge be, and the same hereby are, overruled; and

2. The Report and Recommendation of the United States Magistrate Judge be, and the same hereby is adopted, with judgment to enter in favor of the defendant.

So ordered.

/s/James G. Carr
Sr. United States District Judge